# Richmond.

## CAROLINA COTTON AND WOOLEN MILLS COMPANY V. COMMONWEALTH, ET ALS.

### January 17, 1924.

Absent, Sims and Burks, JJ.

1. TAXATION—*Manufacturing Machinery—Real Estate or Capital—Case at Bar*.—Machinery used for the purpose of manufacturing cotton cloth, most of which was heavy and bolted to the floors of the buildings, and which could not be removed from the buildings without substantial injury thereto, and which was essential for the purposes for which the buildings were occupied, is real estate under Code of 1919, section 2298 and section 2244 as amended by Acts 1920, chapter 40, section 1, for purposes of taxation. While machinery and tools, not properly taxable as real estate, should be taxed as capital, the machinery in controversy, being attached to the freehold, was properly taxable as real estate.

2. FIXTURES—*What are Fixtures—Machinery*.—Where the machinery is permanent in its character, and essential to the purpose for which the building is occupied, it must be regarded as realty and pass with the buildings; and whatever is essential to the purpose for which the building is used will be considered a fixture, although the connection between them is such that it may be severed without physical or lasting injury to either.

3. TAXATION—*Classification—Power of the Legislature*.—The General Assembly of Virginia has the power to classify subjects of taxation.

4. TAXATION—*Manufacturing Machinery—Assessable as Real Estate*.—It is manifest from the language used in section 2298 of the Code of 1919 and section 2244, as amended by Acts 1920, chapter 40, that the legislature intended to and has classified all machinery attached to the buildings in manufacturing, mining, and similar establishments and used in connection therewith as real estate, and to that end requires that the assessed values thereof be entered on the land books.

5. TAXATION—*Assessment for Taxation—Evidence Held to Show that the Machinery of a Manufacturing Corporation was Taxed as Real Estate*.—On an application by a manufacturing corporation for the correction of an alleged erroneous assessment of taxes, according to the testi-

mony of the assistant assessor of lands, who made the assessment, he did not make a separate assessment of the machinery attached to the buildings, but included the value of the machinery in his assessment of the value of the buildings on the land, and placed the value of the buildings, including machinery, at the fair market value thereof. This testimony was sustained by the testimony of other witnesses.

*Held:* That the evidence was sufficient to show that the corporation's machinery was assessed as real estate during the years in question.

6. TAXATION—*Correction of Assessment—Correction at Instance of Commonwealth.*—Where the Commonwealth fails to apply to the circuit court under section 2248 of the Code of 1919 within the time allowed by law for the correction of an assessment, it cannot afterwards do so, nor has the court the power to make any change in the assessment.

7. TAXATION—*Machinery—Capital or Real Estate.*—Where the machinery of a manufacturing corporation was properly assessable as real estate, and had been so assessed in the quinquennial assessment of real estate in 1920, it cannot be assessed as capital for the years 1920, 1921 and 1922.

Error to a judgment of the Circuit Court of Henry county, on a motion to correct an erroneous assessment. Judgment for the Commonwealth. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Malcolm K. Harris, J. P. Buchanan* and *Gravely & Carter,* for the plaintiff in error.

*J. Vaughan Gary,* for the Commonwealth.

WEST, J., delivered the opinion of the court.

The Carolina Cotton and Woolen Mills Company complains of a judgment denying its application for the correction of alleged erroneous assessments of taxes against it in the years 1920, 1921 and 1922.

The Carolina Cotton and Woolen Mills Company, a corporation organized under the laws of the State of North Carolina, owns and operates a large cotton mill plant at Fieldale, Henry county, Virginia.

The company's plant consists of mill, bleachery, filter plant and power house, erected and used for the purpose of manufacturing cotton cloth, and is equipped with the necessary machinery for that purpose, most of which is heavy and bolted to the floors of the buildings.

In 1920 the assistant assessor of lands, according to his testimony, assessed the improvements on the company's land, including the machinery in the buildings, at the aggregate sum of $210,000.00, but his land book shows no separate entry of the value of the machinery, but simply the $210,000.00 in the column for improvements.   In 1921 the commissioner of the revenue for district No. 2 added nothing to the land book for that year on account of improvements, and it does not appear that any improvements had been made since the assessment of lands in 1920.

In the year 1922, the commissioner of the revenue added to the assessment of the company for additional machinery installed in its plant to February 1, 1922, the sum of $85,000.00, placing this sum in the column for machinery on the land book.

In the summer of 1922, the examiner of records being of the opinion that the machinery in the buildings should be assessed as capital invested in business, assessed the company with its value on the 1st day of February, 1920, $433,932.00, as omitted capital for 1920, and its value on the 1st day of February, 1921, $484,-347.00, as omitted capital for 1921, and also reported to the commissioner of the revenue for assessment for the year 1922, as capital, the sum of $686,685.00, in addition to the capital reported by the company, as the value of the machinery on February 1, 1922.

On September 27, 1922, the commissioner of the revenue for district No. 2 in Henry county, upon the report of the examiner of records, assessed and charged the company with State taxes amounting to $7,334.70, and county levies amounting to $2,558.70 on capital for the then current year 1922; with State taxes, penalties and interest amounting to $4,495.71, and county levies, penalties and interest amounting to $1,586.72, on omitted capital for the year 1921; and with State taxes, penalties and interest amounting to $4,260.12, and county levies, penalties and interest amounting to $1,503.58, on omitted capital for the year 1920.

Upon the final hearing the court refused to grant relief against the assessments reported by the examiner of records and entered the judgment complained of.

The company contends that the machinery in the plant at Fieldale is real estate, assessable as such only; that it was so assessed, but if not assessed as real estate, it cannot now be assessed as capital.

The Commonwealth insists that the machinery was properly assessable as capital and not as real estate; that if it was assessable as real estate, it was not so assessed for the years 1920, 1921 and 1922, and that the assessment of the machinery as omitted capital for these years is legal, valid and binding.

The assignments of error can be disposed of by the consideration of two questions:

1. Is the company's machinery properly assessable as real estate?

2. If so, was it so assessed for the years 1920, 1921 and 1922?

Both questions must be answered in the affirmative.

[1] As appears from the evidence, the company's plant is located on its own land and was erected to be indefinitely and permanently used for the manufacture

of cotton cloth.  The buildings are of brick with sub-
floors of concrete and cement, with double wooden
floors on top of the concrete floors.  The machinery is
very heavy and is securely attached to the buildings by
iron bolts or rods extending, in some instances, through
the wooden floors only, but in others, through the
wooden and concrete floors; and forty per cent of the
machinery is bolted to concrete foundations extending
several feet below the floors.  The wires and pipes con-·
necting the machinery with the power house are laid in
the concrete floors, and according to the testimony of
two witnesses the machinery could not be removed from
the buildings without substantial injury thereto, and is
essential for the purposes for which the buildings are
occupied, the buildings and machinery together consti-
tuting the complete manufacturing plant.

[2] In the case of *Green* v. *Phillips*, 26 Gratt. (67 Va.)
752, 21 Am. Rep. 323, Judge Christian, speaking for the
court, quoted with approval from Lord Mansfield in
*Lawton* v. *Salmon*, 1 H. Bl. 259, as follows: "Whatever
is essential to the purpose for which the building is used
will be considered as a fixture, although the connection
between them is such that it may be severed without
physical or lasting injury to either."  Proceeding, Judge
Christian says: "In accordance with this doctrine, it
has been repeatedly held that a steam engine, erected
for the purpose of furnishing the motive power of a
manufactory, is to be regarded as a fixture, or in other
words, as a part of the manufactory itself; and there are
numerous cases which hold that the machinery of a
manufactory is to be regarded as part of the realty,
whether it is attached to the body of the building, or
merely connected with the other machinery by running
bands or gearing, which may be thrown off at pleasure
without injury to the freehold.  See cases cited in note,

2 Smith's Leading Cases (7th Am. ed.) 202.    *    *    *
The true rule deduced from all the authorities seems to
be this: Where the machinery is permanent in its char-
acter, and essential to the purpose for which the build-
ing is occupied, it must be regarded as realty and pass
with the buildings; and that whatever is essential to the
purpose for which the building is used will be considered
a fixture, although the connection between them is such
that it may be severed without physical or lasting in-
jury to either."

The doctrine laid down in *Green* v. *Phillips, supra,* has
been specifically approved and followed by this court in
*Shelton* v. *Ficklin, Trustee,* 32 Gratt. (73 Va.) 727,
*Morotock Ins. Co.* v. *Rodefer,* 92 Va. 747, 24 S. E. 393,
53 Am. St. Rep. 846, and *Haskin, Wood, etc., Co.* v.
*Cleveland, etc., Co.,* 94 Va. 439, 26 S. E. 878.

[3, 4] The General Assembly of Virginia has the
power to classify subjects of taxation and has provided
in section 2298 of the Code as follows: "The commis-
sioner in assessing the value of machinery and other fix-
tures to real estate in mining, manufacturing or similar
establishments, shall ascertain the value of all such ma-
chinery and fixtures attached thereto, and include the
aggregate value thereof as improvements on real estate
in the same manner and to the same effect as in case of
buildings and enclosures added to real estate, under the
provisions of this chapter."

It has also provided by section 2244 of the Code, as
amended by the Acts of 1920, chapter 40, that "the as-
sessors shall immediately after their appointment pro-
ceed to examine all lands and lots assessable by them
*   *   *   they shall include in their reassessments all
buildings, and in manufacturing, mining or similar es-
tablishments the *machinery and fixtures attached thereto*
shall be assessed and shown separately on the *assessor's*
books." (Italics supplied.)

It is manifest from the language used in these sections that the legislature intended to and has classified all *machinery attached* to the buildings in manufacturing, mining and similar establishments and used in connection therewith as real estate, and to that end requires that the assessed values thereof be entered on the land books.

Counsel for the Commonwealth admits in his brief that the early cases in Virginia show a tendency "to lean strongly towards the classification of machinery as real estate." But contends that this rule was relaxed in *Monarch Laundry* v. *Westbrook*, 109 Va. 382, 63 S. E. 1070. In this case the controversy was not whether certain engines, boilers and machinery used in the laundry were fixtures, but whether the reservation of the title to the boilers, engines and machinery was valid. The court held that the term "goods and chattels" used in section 2462 of the Code of 1887 is restricted to "visible, tangible and movable" personal property, and that the engines, boilers and machinery for a laundry were personal property, and if the terms of the statute (section 2462) are complied with, the title thereto may be retained by the vendor, although afterwards installed as part of the plant.

Counsel for the Commonwealth further contends that this court in *Buchanan County* v. *Ritter Lumber Co.*, 125 Va. 617, 100 S. E. 546, has "clarified the situation" and laid down a rule by which machinery attached to the buildings of a permanent manufacturing plant and used in the manufacture of its products is taxable as personal property. The *Ritter Lumber Company Case* did not, as does the instant case, involve the question whether machinery attached to the buildings of a permanent manufacturing plant should be assessed as real estate, but whether portable band sawmills and the machinery

attached to them are assessable as "capital" under sub-
section 2 of section 8 of the tax bill, as amended by the
Acts of 1916, chapter 382, and are taxable as such under
clause (6), "all machinery and tools not taxed as real
estate." The court correctly held that band sawmills
carried from place to place as the exigencies of a lumber
manufacturing corporation may require, are taxable as
"capital," because not permanently attached to the
freehold for the purpose of carrying on the manufacture
of lumber at that point indefinitely. No reference is
made in the opinion to *Green* v. *Phillips, Shelton* v.
*Ficklin,* or either of the other cases mentioned above,
and nothing contained therein was intended to modify
or reverse the rule laid down and approved in these
cases. So far as the language used conveys the con-
trary impression, we decline to follow it.

While machinery and tools not properly taxable as
real estate should be taxed as "capital," the machinery
in controversy being attached to the freehold is under
the statute and the authorities properly taxable as real
estate.

[5] Was the company's machinery assessed as real
estate for the years 1920, 1921 and 1922?

According to the weight of the evidence it was.
George Rangely, assistant assessor of lands for district
No. 2, in Henry county, Virginia, who made the quin-
quenial assessment of lands in his district in 1920, tes-
tified that J. Frank Wilson, manager of the company,
was present when he made the assessment and gave him
such information in regard to the buildings, machinery
and other improvements on the land as requested; that
in assessing the improvements on the land he did not
make a separate assessment of the machinery attached
to the buildings, but included the value of the machin-
ery in his assessment of the value of the buildings on the

land, and placed the value of the *buildings*, including machinery, at the fair market value thereof, considering the assessment of other real estate in the district, in the column for improvements, on the land book, making no entry in the column provided for the assessment of machinery.

W. H. Miner, assessor of lands in district No. 1, Henry county, in 1920, testified that in assessing a cotton mill and other manufacturing plants in his district, he did not, in assessing the improvements, assess the machinery attached to the buildings separately, but included the value of the machinery in the value put upon the buildings, and placed the aggregate value of the buildings and machinery in the column for improvements, on the land book; that he did this because he understood the Auditor of Public Accounts had advised the assessors that they could do so; that he was present when George Rangely assessed the property of the plaintiff company, and that he assessed the machinery in the manner stated in his testimony; and that the Auditor of Public Accounts received and approved the books of the assessors in this form without objection.

The statement of Assessor Rangely that he included in the assessment of the buildings the machinery attached thereto at what he considered the fair market value thereof is also sustained by the testimony of J. Frank Wilson, manager of the Fieldale plant.

[6] If those representing the Commonwealth thought the assessment made by Assessor Rangely was too low, the Commonwealth had the right, under section 2248 of the Code of 1919, at any time prior to February, 1922, to apply to the circuit court of the county to have the same corrected so as to show a proper assessment. Having failed to avail itself of this right within the time allowed by law, it cannot now do so, nor has the court the power to make any change in the assessment.

[7] The machinery of the Fieldale plant in controversy being properly assessable as real estate, and having been so assessed in the quinquenial assessment of real estate in 1920, it is clear that it cannot now be assessed as "capital."

The judgment sustaining the assessments of capital and omitted capital based upon the report of the examiner of records is erroneous and will be reversed, and the company granted the relief prayed for.

*Reversed.*